IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA )
)
v. )
) Criminal No. 3:09CR20–HEH
MOORTHY S. RAM, )
)
Petitioner. )

## MEMORANDUM OPINION
(Denying 28 U.S.C. § 2255 Motion)

Moorthy S. Ram ("Ram"), a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion") (ECF No. 63). Ram argues entitlement to relief based on the following:[1]

| | |
|---|---|
| Claim One: | The Government breached Ram's Plea Agreement by seeking an upward departure or variance at sentencing. (Mem. Supp. § 2255 Mot. 9–10.) |
| Claim Two: | Counsel violated Ram's Sixth Amendment[2] right to effective assistance of counsel by failing to withdraw his guilty plea in light of the Government's possession of evidence demonstrating Ram's innocence. (*Id.* 10–12, 14–18.) |
| Claim Three: | Counsel rendered ineffective assistance by: |
| | (a) allowing Ram to plead guilty "to an offense Ram did not commit"; |
| | (b) failing to move to dismiss the indictment; |

---

[1] The actual innocence claim labeled as Ground Two the § 2255 Motion form is discussed within Claim Two here.

[2] "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend. VI.

|     |     |
| --- | --- |
| (c) | failing to move for dismissal based on speedy trial[3] violations; |
| (d) | failing to advance Ram's motion to withdraw his guilty plea; |
| (e) | "withdrawing Ram's sentencing objections . . . and not renewing those objections"; |
| (f) | "for not moving to dismiss the Indictment due to insufficient evidence . . ."; and, |
| (g) | failing to develop and present mitigating evidence. (*Id.* 23–25.) |

Claim Four: The Court sentenced Ram to a substantively and procedurally unreasonable sentence. (*Id.* at 26–29.)

The Government argues that Ram procedurally defaulted Claims One and Four and that the remaining claims lack merit. Ram has replied. The matter is now ripe for disposition.

## I. PROCEDURAL HISTORY

A grand jury returned an indictment charging Ram with three counts of bank fraud (Counts 1, 3, and 5) and three counts of aggravated identity theft (Counts 2, 4, and 6). (Indictment (ECF No. 1) 2–5.) Amy Austin initially served as Ram's court appointed counsel. Austin negotiated a plea agreement with the Government pursuant to which Ram pled guilty to Count 1 and the Government dismissed the remaining five counts. (Plea Agreement ¶¶ (ECF No. 21) 1, 10.)

---

[3] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

In the accompanying Statement of Facts, Ram agreed that "[i]f this matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt:"

    1.    On or about March 14, 2008, defendant MOORTHY SRINIVASAN RAM filed an Application for Change of Name (Adult) in Henrico County Circuit Court changing his name from "Ram Srinivasan to a version of "P.S.'s" name (named as a victim herein). P.S. is an actual person who had interacted with the defendant in late 2007 through early 2008. P.S. did not authorize and had no knowledge of the defendant's actions in assuming his P.S.'s name and did not know that RAM also planned on using P.S.'s Social Security Number in connection with the scheme charged in Count 1.

    2.    **Bank Fraud (Count 1)** - RAM agrees that beginning at some point prior to March 22, 2008 and continuing through in or about May 13, 2008, in the Eastern District of Virginia and elsewhere, the defendant did knowingly execute and attempt to execute a scheme and artifice to defraud and obtain moneys, funds and property owned by and under the custody and control of BB&T Bank, a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation. RAM executed the scheme by means of materially false and fraudulent pretenses, representations and promises, to wit: the defendant fraudulently used P.S.'s name, Date of Birth, and Social Security Number to open BB&T Bank Account *********9037 in the name of "P.S." In connection with opening the account, RAM also presented the Virginia Driver's License in P.S.'s name (referenced above in paragraph 2). [D]efendant fraudulently used P.S.'s name, Date of Birth, and Social Security Number to open BB&T Bank Account *********9037 in the name of "P.S." The defendant subsequently used that account to receive and transfer fraudulent funds received from cash advances on two fraudulent Bank of America credit cards the defendant had also obtained in P.S.'s name.

    3.    The BB&T Bank account (number *********9037) was not expressly or impliedly authorized by P.S. RAM withdrew the money out of this BB&T Bank account and used it for his own expenses. RAM withdrew the money out of this account a number of ways, including over-the-counter withdrawals and checks made payable to "P.S." Further, RAM's representations and actions with respect to BB&T Bank were material in that BB&T Bank would not had approved the opening of the bank account and the subsequent transactions if the defendant had

revealed that he had stolen P.S.'s identity and had no authorization to open the bank account or conduct the transactions.

(Statement of Facts (ECF No. 22) ¶¶ 1–3.)

On the morning of May 8, 2009, the day of the scheduled guilty plea hearing, the Government learned of Ram's prior efforts to tamper with a potential witness. (Gov't's Resp. 6.)[4] The Government disclosed this information to Austin before the guilty plea hearing and Ram elected to proceed with the guilty plea with the knowledge that he could lose credit under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") for acceptance of responsibility and receive an enhancement for obstruction of justice. (*Id.* at 6; May 8, 2009 Tr. 2–3.)

On May 8, 2009, Ram signed the Plea Agreement, the Court conducted a Rule 11 colloquy, accepted Ram's plea of guilty, and ordered the preparation of a presentence report ("PSR").

On August 5, 2009, the Government filed its Sentencing Memorandum and Motion for Upward Departure or Variance seeking a sentencing range of seventy (70) to eighty-seven (87) months of incarceration. (Sent. Mem. (ECF No. 27) 2.)[5] The Government argued that his "current Criminal History Category substantially under-represents the seriousness of his prior criminal conduct and the likelihood that the

---

[4] Specifically, the Government became aware of a letter Ram wrote to P.S.'s wife in which Ram made numerous admissions that he had used P.S.'s identifiers without authorization and in which he attempted to obstruct justice by influencing P.S. and his wife to lie to the Government about Ram's criminal activity. (*See* Gov't's Resp. 6, 9; Gov't's Resp. Ex. E.)

[5] Based upon the Guidelines, the PSR recommended a Total Offense Level of 18 and Criminal History Category of V, yielding a guideline range of 51 to 63 months of incarceration. (*See* Sent. Mem. 1–2.)

defendant will commit other crimes." (*Id.*) The Government cited Ram's seventeen-year history of fraudulent criminal activity as identified in the PSR. (Sent. Mem. 5–9.)

On August 25, 2009, Ram filed a *pro se* Motion to Withdraw Plea of Guilty. (ECF No. 30.) Ram argued that the Court should allow Ram to withdraw his guilty plea because counsel promised Ram a sentence of 18 to 24 months if Ram pled guilty and because he "was forced to accept the Plea Agreement." (Mot. Withdraw Plea 1–2.) Based upon Ram's motion, Austin filed a Motion to Withdraw as Attorney and Appoint New Counsel. (ECF No. 33.) The Court granted Austin's motion and appointed Jeffrey Everhart to represent Ram through sentencing. (ECF No. 34.) Upon advice from counsel, Ram ultimately withdrew the Motion to Withdraw Plea of Guilty. (Sept. 17, 2009 Tr. 3.)

While Austin had previously filed objections to the PSR, Everhart successfully petitioned the Court for permission to file a belated objection. (Sept. 17, 2009 Tr. 3–4; Gov't's Resp. Ex. G, at PageID# 418.)[6] During sentencing, Everhart challenged the sentencing enhancements for sophisticated means and obstruction of justice and argued against the Government's Motion for Upward Departure and Variance. (Oct. 23, 2009 Tr. 5–26.) The Court overruled Ram's objections and granted the Motion for Upward Departure, yielding a sentencing range of 70 to 87 months in prison. (Oct. 23, 2009 Tr. 26–34.)

---

[6] The Court employs the PageID# assigned by the Court's CM/ECF docketing system for citations to and quotations from Exhibit G (ECF No. 73–2) to the Government's Motion to Dismiss. Exhibit G is the affidavit of Jeffrey L. Everhart and supporting attachments.

In his allocution, Ram explained that he did not intend to defraud anyone but "collected the money" in order to help P.S. receive a lower sentence by bribing Indian officials. (Oct. 23, 2009 Tr. 40–45.) In sentencing Ram, the Court explained:

> Before I heard your allocution today, I intended to sentence you at the midrange of the Guidelines. But after hearing your allocution, I'm convinced that everything [the Government] argued is correct. So I will give you the maximum sentence I can give you under the Guidelines. I don't need to say more. The record speaks for itself.

(Sept. 17, 2009 Tr. 46.) The Court sentenced Ram to 87 months of imprisonment. (J. (ECF No. 43) 2.) Despite Ram's waiver of his right to appeal in the Plea Agreement (*see* Plea Agreement 3), Ram filed a timely notice of appeal. (ECF No. 46.) The United States Court of Appeals for the Fourth Circuit dismissed Ram's appeal. *United States v. Ram*, No. 09-5019 (4th Cir. June 9, 2010).

## II. DEFAULTED CLAIMS

The Government correctly notes that, because Ram could have, but failed to raise Claims One and Four on direct appeal, he procedurally defaulted these claims. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Ram fails to show cause and prejudice or his actual innocence[7] to excuse his default. Accordingly, Claims One and Four will be dismissed.

---

[7] Despite Ram's use of the term "actual innocence" in his Memorandum, Ram fails to argue that he is actually innocent. Ram's arguments are discussed more fully in *infra* Part III.B.

6

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Ram's assertion that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a

7

trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70.

Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (alteration in original) (internal quotation marks and citations omitted). Accordingly, the Fourth Circuit has admonished that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22.

B.  **Indictment and Plea Negotiations**

1.  **Failure to Withdraw Guilty Plea**

In Claims Two and Three (d), Ram faults both Austin and Everhart for not pursuing Ram's Motion to Withdraw Plea of Guilty. Ram argues that prior to sentencing, he "learned that the [G]overnment was in possession of evidence that would establish

8

[his] claim that he and the alleged victim had an informal agreement that would establish Mr. Ram's innocence," and thus, counsel should have pursued his motion. (Mem. Supp. § 2255 Mot. 14.) However, Ram's Motion to Withdraw Guilty Plea raised no claim of innocence. Instead, he argued that counsel promised he would receive an 18 to 24 month sentence and he was forced to sign the Plea Agreement. (Mot. Withdraw Plea. 1–2.) Based upon Ram's allegations against Austin in the Motion to Withdraw Guilty Plea, the Court granted her Motion to Withdraw from the case and appointed Everhart.

Both Austin and Everhart reasonably eschewed pursuing Ram's Motion to Withdraw based upon the frivolous claims advanced in the motion. First, Ram fails to demonstrate that Austin acted deficiently with regard to his motion. When Ram lodged complaints about her performance in his Motion to Withdraw she sought to withdraw as counsel. Ram fails to demonstrate that her actions were deficient.

Second, Everhart wisely advised Ram to withdraw the Motion to Withdraw his plea. Everhart explains that he advised Ram to withdraw his Motion to Withdraw due to the low chance of success on the motion and the risk of losing credit for acceptance of responsibility. (Gov't's Resp. Ex. G, at PageID# 416–17.) Everhart also explains that even if the Court permitted Ram to withdraw his guilty plea, the Government would simply introduce the Plea Agreement and Statement of Facts, which Ram had affirmed as to truthfulness and accurary, into evidence at trial and easily attain a conviction. (*Id.*) Ram fails to demonstrate any deficiency of counsel and Claims Two and Three (d) will be dismissed.

## 2. Failure to Dismiss the Indictment and Plea Negotiations

In Claim Three (a), Ram contends that "counsel negotiated a plea of guilty to an offense Ram did not commit." (Mem. Supp. § 2255 Mot. 23.) Ram argues that if counsel had conducted an adequate investigation, counsel "would have known that there was not a crime here." (*Id.*) In a similar vein, in Claims Three (b) and (f) he argues that counsel was deficient for failing to dismiss the Indictment based upon his innocence. Ram's claim of "innocence" wholly lacks merit.

Ram bases his claims of "innocence" upon an alleged agreement that Ram and the victim P.S. struck to use the victim's name and identifying information. (Mem. Supp. § 2255 Mot. 10–12.) Both the Government and Ram's counsel became aware of the possible existence of an arrangement prior to the entry of Ram's plea agreement. (Gov't's Resp. 5; *Id.* Ex. G at PageID# 417.) The Government spoke with P.S.'s attorney who agreed that P.S. gave Ram his identifying information but "was adamant that P.S. had not given Mr. Ram permission to open and gain access to P.S.'s accounts." (*Id.* Ex. G at PageID# 417.) The Government admits this "troubling" information ultimately prompted the Government to dismiss the aggravated identity theft charges. (Gov't's Resp. 5.) Any purported agreement between Ram and P.S., however, had no impact on Ram's guilt for the bank fraud convictions.

Through an elaborate criminal plan, Ram legally changed his name to P.S., had a Virginia Driver's License in P.S.'s name, and then fraudulently used the Driver's License, and P.S.'s name, date of birth, and social security number to open a BB&T bank account in the name of P.S. (Statement of Facts 1–2.) Ram subsequently used that

account to receive and transfer fraudulent funds received from cash advances on two fraudulent Bank of America credit cards that Ram also obtained in P.S.'s name. (*Id.* at 2.) Ram fails to suggest how any permission from P.S. to use his identifying information undermines Ram's culpability for defrauding a bank.[8] Thus, counsel reasonably eschewed pursuing the arguments Ram advances here. Because Ram fails to demonstrate any deficiency of counsel with regard to his guilty plea, Claims Three (a), (b), and (f) will be dismissed.

### 3. Purported Speedy Trial Violation

In Claim Three (c) Ram faults counsel for "failing to move for dismissal based on the violation of Ram's Sixth Amendment speedy trial right" and the Speedy Trial Act.[9] (Mem. Supp. § 2255 Mot. 24.) The sum of Ram's argument is that "a total of 107 days elapsed" between January 21, 2009 and the entry of his Plea Agreement on May 8, 2009. (*Id.*) Ram fails to demonstrate any deficiency of counsel or resulting prejudice.

The Court fails to discern how Ram begins the running of the Speedy Trial Act clock on the date of January 21, 2009, as Ram came before the Court for his Initial Appearance on January 28, 2009. (ECF No. 4); *see* 18 U.S.C. § 3161(c)(1). The Court scheduled Ram's trial for April 6, 2009, within the seventy day speedy trial deadline.

---

[8] Moreover, Ram admitted to his guilt of bank fraud under oath and the truth of sworn statements made during a Rule 11 colloquy is conclusively established absent extraordinary circumstances not alleged here. *Lemaster*, 403 F.3d at 221–22. Thus, Ram fails to demonstrate prejudice by any purported error of counsel.

[9] The Speedy Trial Act requires that a trial for a defendant who pleads not guilty take place within seventy days of the filing and making public of the information or indictment, or the date on which the defendant appeared before a judicial officer in that court on the pending charge, whichever is later. 18 U.S.C. § 3161(c)(1). If there is a violation of the Act, upon counsel's motion, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2).

(ECF No. 10.) Counsel for Ram and the Government jointly filed a Motion for Continuance of Trial Beyond the Speedy Trial Act Cut-Off Date as "the Court's calendar is unavailable to accommodate the trial" on the scheduled date and "neither counsel are available for trial prior to the expiration of the speedy trial cut-off." (ECF No. 12, at 1.) By Order entered March 14, 2009, the Court granted the Motion and ordered the trial continued until April 29–30, 2009. (Mar. 14, 2009 Order (ECF No. 13) 1.) Ram moved for an additional continuance "due to the need to contact further witnesses" and "adequately prepare for trial." (ECF No. 14, at 1.) By Order entered April 13, 2009, the Court again granted the Motion and ordered the trial continued until May 12–13, 2009. (Apr. 13, 2009 Order (ECF No. 15) 1.) Ram pled guilty on May 8, 2009.

"Any delay resulting from a continuance granted by a judge . . . at the request of the defendant or his counsel" is excludable from the Speedy Trial Act calculation, so long as the Court finds and sets forth its reasons on the record that "the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in speedy trial." 18 U.S.C. § 3161(h)(7)(A). Here, any delay caused by the continuance was excludable from the speedy trial calculation. The Court found both continuances to be "just and proper," noted those reasons on the record, and was not required to elaborate on its findings at that time. (Mar. 14, 2009 Order 1; Apr. 13, 2009 Order 1); *see United States v. Henry*, 538 F.3d 300, 304 (4th Cir. 2008) ("stating that 'the Act is clear that findings must be made, if only in the judge's mind, before granting the [ends-of-justice] continuance,'" so long as the findings are in the record by the time the judge rules on defendant's motion to dismiss (alteration in original) (quoting *Zedner v. United States*,

547 U.S. 489, 506–07 (2006))); *Carrington v. United States*, No. 3:09–CR–160, 2013 WL 1165241, at *10–11 (E.D. Va. Mar. 20, 2013) (citation omitted) (explaining that "the continuance is not made void by the fact that the Court did not elaborate on the ends of justice considerations at that time"). Accordingly, Ram fails to demonstrate that counsel acted deficiently in not objecting to his own continuance. Ram also provides no argument that he suffered prejudice.

Ram also fails to state a claim of ineffective assistance based on the Sixth Amendment speedy trial right. The Court considers four factors in analyzing a Sixth Amendment speedy trial claim: "(1) the length of the delay; (2) the reason for the delay;" (3) the defendant's diligence in asserting the speedy trial right; and, (4) any prejudice to the defendant resulting from the delay. *United States v. Thomas*, 305 F. App'x 960, 963 (4th Cir. 2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Counsel reasonably eschewed making a speedy trial motion as none of these factors tip in Ram's favor. First, the delay Ram complains of here was around one month, and that alone fails to trigger the other factors enumerated in *Barker*. *Thomas*, 305 F. App'x at 963–64 (citing *United States v. MacDonald*, 635 F.2d 1115, 1117 (4th Cir. 1980) for the proposition that an eleven month-delay was "entirely too short to 'trigger' further inquiry under *Barker*"). Even considering the other factors, Ram demonstrates no speedy trial violation as the delay was caused in part by a continuance agreed to by the parties, Ram failed to promptly complain about the delay, and Ram demonstrates no prejudice from the delay. Thus, Ram fails to demonstrate prejudice from counsel's failure to raise a Sixth Amendment challenge. Accordingly, Claim Three (c) lacks merit and will be dismissed.

13

C.  **Sentencing Claims**

In Claims Three (e) and (g), Ram, argues that both counsel rendered ineffective assistance at sentencing. In Claim Three (e) Ram faults Austin for "withdrawing Ram's sentencing objections" and then Everhart for "not renewing those objections." (Mem. Supp. § 2255 Mot. 24.) Claim Three (e) lacks factual merit as Austin never withdrew Ram's objections and Everhart argued all of the objections during sentencing. (Gov't's Resp. Ex G. at PageID# 418.) Ram fails to demonstrate deficiency of counsel or any resulting prejudice and Claim Three (e) will be dismissed.

In Claim Three (g) Ram argues that counsel "rendered ineffective assistance by failing to develop and present available mitigating evidence." (Mem. Supp. § 2255 Mot. 24–25.) Ram's "mitigating" evidence stems from his mistaken belief that P.S.'s permission to use his identity exonerates Ram of the bank fraud conviction. Ram contends, "[h]ad counsel conducted any form of pre-sentencing investigation they would have learned that . . . P.S. himself gave Mr. Ram his information to conduct business on his behalf." (*Id.* at 25.) Counsel reasonably eschewed emphasizing Ram's story of his agreement with P.S. during sentencing, as it has no impact on Ram's culpability for defrauding a bank. To the extent Ram suggests that counsel failed to develop any other mitigating evidence, he fails to identify that evidence, and thus demonstrates no deficiency or prejudice. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"); *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a

14

proffer of what favorable evidence or testimony would have been produced." (citing

*Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990))). Claim Three (g) will be

dismissed.

## III. OUTSTANDING MOTIONS

Ram also moves for a downward departure (ECF No. 86) based upon his ailing health and asks for a refund of his restitution payments from the Bureau of Prisons ("BOP") (ECF No. 84). Ram fails to identify a procedural vehicle that would allow the Court to re-evaluate his sentence or order the BOP to refund his restitution payments. Accordingly, his motion for downward departure (ECF No. 86) and motion for a restitution refund (ECF No. 84) will be denied.

## IV. CONCLUSION

Ram's § 2255 Motion will be denied. Ram's claims are dismissed and the action is dismissed. A certificate of appealability will be denied.[10]

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Aug 29 2013
Richmond, Virginia

---

[10] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Ram has not satisfied this standard.